By the Court.
The facts are substantially conceded, and in our view the application of the law becomes quite simple. The contract contemplated a sale and delivery of coke until December 31, 1920. The price agreed upon was $8.89 per ton, but it was expressly stipulated that upon the cessation of government control the price of coke covered by the contract, but then undelivered, should be subject to a revision to a figure to be mutually agreed upon. The lower courts held that under the terms of the contract the original contract price continued in force until a new price should be mutually agreed upon, and that, since no agreement was reached, the price of $8.89 per ton controlled the deliveries made in April and May. This was not the language of the contract contained in the rider attached. The parties there agreed that after control by the United States government ceased they should revise the price by mutual agreement. This was not only the contract between them, but it was so interpreted by the parties, as appears from the numerous confer-, enees and correspondence between them.
It is evident from the record that the plaintiff promptly upon termination of government control endeavored to have a new price fixed and agreed upon. It further appears that no agreement was effected. The position of the defendant therefore seems to be that it could keep aloof from mutual agreement while the deliveries continued, and thus avail itself of the price named in the original contract. The record is replete with testimony diados *29 ing the fact that during the continuance of shipments after March 31st the parties to the contract expected to agree upon a new price for the coke, and we find no contradiction of the testimony that Mr. Savage, the vice president of the defendant, suggested that the shipment of coke be continued until the parties reached an understanding. In support of the judgment on the cross-petition the lower court held that the plaintiff breached the contract by refusing to further ship coke at the old price, of $8.89 per ton. This is fallacious, for at no time did plaintiff agree to furnish coke at $8.89 beyond the period of government control.
In view of the situation, what became the legal obligations of the parties? By the rider it was their duty to mutually agree upon a new price after March 31,1920, and if such price could not be agreed upon, and shipments continued, the seller and buyer were under' obligations, respectively, the seller to ship the coke, and the buyer to pay a reasonable price therefor. Section 8389, General Code, controlled the case in its present aspect. That section provides that the price may be fixed by the contract or left to be fixed in such manner as may be agreed upon, and—
“(4) "When the price is not determined in accordance with the foregoing provisions the buyer must pay. a reasonable price. "What is a reasonable price is a question of fact dependent on the circumstances of each particular case.”
On the showing that the parties were unable to agree upon a new price during the deliveries in April and May it became the duty of the court to *30 ascertain what the reasonable market price was and render judgment accordingly.
The judgments of the common pleas court and Court of Appeals are therefore reversed, and the cause remanded to the former for a new trial, or for further proceedings according to law.

Judgment reversed.

Marshall, C. J., Wanamaker, Robinson, Jones, Matthias, Day and Allen, JJ., concur.